**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A. | ) | |
| and OAKLEY, INC. | ) | |
| | ) | Case No. 16-cv-06063 |
| Plaintiffs, | ) | |
| | ) | **Judge James B. Zagel** |
| v. | ) | |
| | ) | **Magistrate Judge Susan Cox** |
| XIA YU, NEIL MARINO, | ) | |
| NEWRAYBANSALE.COM, NICHOLAS | ) | |
| GANDY, NKJO, NOWSHOPPING.CO, | ) | |
| OAKABEST.COM, OAKABUYHOT.COM, | ) | |
| OAKACOOL.COM, OAKAFAN.COM, | ) | |
| OAKAGOOD.COM, OAKAHOT.COM, | ) | |
| OAKAKIND.COM, OAKALIKE.COM, | ) | |
| OAKALINK.COM, OAKALOVE.COM, | ) | |
| OAKAMAZONGO.COM, OAKANEW.COM, | ) | |
| OAKANVIP.COM, OAKAPOP.COM, | ) | |
| OAKAREAL.COM, OAKASALE.COM, | ) | |
| OAKASELL.COM, OAKASKY.COM, | ) | |
| OAKASTAR.COM, OAKATOP.COM, | ) | |
| OAKAUP.COM, OAKAVIP.COM, | ) | |
| OAKAWELL.COM, OAKAWIN.COM, | ) | |
| OAKB2CBRAND.COM, | ) | |
| OAKBESTGOGO.COM, | ) | |
| OAKBIGLOVE.COM, OAKBIGSTORE.COM, | ) | |
| OAKBIGTOP.COM, OAKBRANDBUY.COM, | ) | |
| OAKBRANDOAK.COM, | ) | |
| OAKBRANDSVIP.COM, | ) | |
| OAKBUYBEST.COM, OAKBUYGOOD.COM, | ) | |
| OAKBUYSHOP.COM, OAKBUYVIPS.COM, | ) | |
| OAKBUYWORLD.COM, OAKCALL.COM, | ) | |
| OAKCBEST.COM, OAKCBIG.COM, | ) | |
| OAKCBUY.COM, OAKCEYE.COM, | ) | |
| OAKCFAN.COM, OAKCFIND.COM, | ) | |
| OAKCFUN.COM, OAKCGET.COM, | ) | |
| OAKCGO.COM, OAKCHEAPOAK.COM, | ) | |
| OAKCHEAPSGO.COM, OAKCHERE.COM, | ) | |
| OAKCHIGH.COM, OAKCHOT.COM, | ) | |
| OAKCKEEP.COM, OAKCLENS.COM, | ) | |
| OAKCLINK.COM, OAKCLOOK.COM, | ) | |
| OAKCNICE.COM, OAKCONLY.COM, | ) | |
| OAKCOOLBUY.COM, | ) | |

OAKCOOLEBUY.COM,                                              )
OAKCOOLWAYS.COM, OAKCPOP.COM,                    )
OAKCREAL.COM, OAKCSELL.COM,                          )
OAKCSHOW.COM, OAKCSKY.COM,                           )
OAKCSPORT.COM, OAKCSTAR.COM,                         )
OAKCSTORE.COM, OAKCSTYLE.COM,                       )
OAKCSUN.COM, OAKCSWEET.COM,                         )
OAKCUS.COM, OAKCWAY.COM,                               )
OAKCWEAR.COM, OAKCWELL.COM,                         )
OAKCWIN.COM, OAKCZONE.COM,                           )
OAKDOCHEAP.COM, OAKDOREAL.COM,                   )
OAKDOSHOP.COM, OAKDOUP.COM,                         )
OAKENJOYBEST.COM,                                             )
OAKENJOYSHOP.COM,                                             )
OAKESHOPBUY.COM,                                               )
OAKESHOPGO.COM,                                                 )
OAKESHOPRUN.COM, OAKESTARS.COM,                 )
OAKEUSUPER.COM, OAKEWAY.COM,                       )
OAKFANS.NET, OAKFIGHTING.COM,                        )
OAKGETOPS.COM, OAKGLOVE.COM,                        )
OAKGMALL.COM, OAKGOEBUY.COM,                       )
OAKGOGOOD.COM,                                                 )
OAKGOODMALL.COM, OAKGOPOP.COM,                 )
OAKGOTO.COM, OAKHITS.COM,                              )
OAKHOTEBUY.COM,                                                )
OAKHOTESHOP.COM,                                              )
OAKHOTSTYLE.COM, OAKINART.COM,                    )
OAKINBUY.COM, OAKINMALL.COM,                        )
OAKINMIX.COM, OAKINNEW.COM,                          )
OAKINTOP.COM, OAKINWAY.COM,                          )
OAKINWIN.COM, OAKINZONE.COM,                         )
OAKIONE.COM, OAKIWEARS.COM,                          )
OAKJSHOP.COM, OAKKCHEAP.COM,                        )
OAKKLOVE.COM, OAKKSHOP.COM,                         )
OAKLEYLOVER.COM,                                              )
OAKLEYSUNGLASSES-OUTLET.NAME,                  )
OAKLOVEBEST.COM, OAKMBRAND.COM, )
OAKMSHOP.COM, OAKMSTORE.COM,                     )
OAKMYESHOP.COM,                                                )
OAKNEWGOODS.COM, OAKNEWUP.COM, )
OAKOFANS.COM, OAKOHOTS.COM,                         )
OAKOMGCHEAP.COM, OAKONLIKE.COM, )
OAKONLYBUY.COM, OAKONLYY.COM,                   )
OAKOURSTORE.COM, OAKOWINS.COM,                 )
OAKPICKBUY.COM, OAKPICKCOOL.COM, )
OAKPICKSALE.COM,                                               )

OAKPICKWAYS.COM, OAKQBUY.COM,   )
OAKQONLINE.COM, OAKQOUTLET.COM,  )
OAKQPICK.COM, OAKQSPORT.COM,    )
OAKREALDO.COM, OAKRUP.COM,    )
OAKSALEGOOD.COM,    )
OAKSALESHOP.COM, OAKSELLGO.COM,  )
OAKSHOPCHEAP.COM,    )
OAKSHOPCOOL.COM,    )
OAKSHOPNEW.COM,    )
OAKSHOPNOW.COM,    )
OAKSHOPPICK.COM,    )
OAKSHOPPING.COM, OAKSHOPPOP.COM, )
OAKSHOPSGO.COM, OAKSHOPWAY.COM, )
OAKSHOPZONE.COM,    )
OAKSTYLEVIP.COM,    )
OAKSUPERBUY.COM,    )
OAKSUPERGO.COM, OAKSWIND.COM,  )
OAKTOBEST.COM, OAKTOCOOL.COM,  )
OAKTOFAN.COM, OAKTOFUN.COM,   )
OAKTOGOOD.COM, OAKTOHOT.COM,   )
OAKTOLIKE.COM, OAKTOLOVE.COM,  )
OAKTONEW.COM, OAKTOPOP.COM,   )
OAKTOPSBUY.COM, OAKTOSELL.COM,  )
OAKTOSTAR.COM, OAKTOVIP.COM,   )
OAKTOWAY.COM, OAKTOWEAR.COM,  )
OAKTOWIN.COM, OAKTOZONE.COM,  )
OAKUCHEAP.COM, OAKUFUN.COM,   )
OAKUGO.COM, OAKUHOT.COM,    )
OAKULOVE.COM, OAKUNEW.COM,   )
OAKUPFUN.COM, OAKUPHOT.COM,   )
OAKUPIN.COM, OAKUPVIP.COM,    )
OAKUTOP.COM, OAKUVIP.COM,    )
OAKUWELL.COM, OAKVALL.COM,    )
OAKVIPBEST.COM, OAKVIPCHEAP.COM, )
OAKVIPCOOL.COM, OAKVIPPICK.COM,  )
OAKVIPSALES.COM,    )
OAKVIPSGOOD.COM,    )
OAKVIPSSALE.COM, OAKVIPSWAY.COM, )
OAKVPOP.COM, OAKWEDOBUY.COM,  )
OAKWEHOTS.COM, OAKWENEW.COM,  )
OAKWEPICK.COM, OAKWEPOP.COM,  )
OAKWESALE.COM, OAKWETOP.COM,  )
OAKWEUP.COM, OAKWEVIPS.COM,   )
OAKWEWAY.COM,    )
OAKWORLDBUY.COM,    )
OAKWSHOPPING.COM, OAKYSHOP.COM, )

OAKZONEVIP.COM, OKBSD.COM, )
OKESHOPONLINE.COM, )
OKEYEWEARSHOP.COM, OKFSD.COM, )
OKFWA.COM, OKGLASSES4U.COM, )
OKGLASSESHOME.COM, OKGLK.COM, )
OKIKD.COM, OKKE-DEWI.NL, )
OKMFE.COM, OKNEWBEST.COM, )
OKNEWKIND.COM, OKPTH.COM, )
OKQFH.COM, OKQOW.COM, OKRFS.COM, )
OKSGY.COM, OKSUNGLASSESTORE.COM, )
OKSUNGLASSESTORES.COM, )
OKSUNGLASSMALL.COM, )
OKSUPERSHOP.COM, OKVDE.COM, )
OKVIPESHOP.COM, OKWQF.COM, )
OKYEC.COM, OKYNI.COM, )
ONLINESTYLES.XYZ, )
ONLYOKGLASSES.COM, )
PAGEONEAYEARINTHENEWYORKTIMES. )
COM, PAINTER COLIN, PALENCIA )
GABRIEL, PALENCIA GABRIEL 2, )
PARELVANTEXEL.NL, PEN HAILAO, PENG )
LIU, PENNY T. MCINTYRE, )
PERKEDLABS.CA, PETER POWELL, )
PHILIPP EBERSBACH, PHILLIPS )
COLEMAN, PHILLIPS COLEMAN 2, )
PHONE-ETHIQUE.FR, PING LI, )
POPONLINE.CC, PU XIAO, QI QIANG, QIAN )
HUANG, RAICES MAGGIE, RAKOVSKAJA )
ANNA, RASAY LILIA, RASAY LILIA 2, )
RASAY LILIA 3, RAYBAN-6PM.COM, )
RAYBANCOOLER.COM, )
RAYBANINR.COM, RAYBANINUSA.COM, )
RAYBANLOVER.COM, )
RAYBANOKSTORE.COM, RAYBAN- )
ORIGINALS.EU, RAY-BANPAS-CHER.COM, )
RAYBAN-SALE.COM, )
RAYBANTOPCA.COM, )
RAYBOKSTORE.COM, RB1937-OS.COM, )
RB1937US.COM, RBABUYHOT.COM, )
RBADA.COM, RBAIK.COM, )
RBAMAZONGO.COM, RBAOM.COM, )
RBAVO.COM, RBAZQ.COM, )
RBBESTGOGO.COM, RBBRANDBUY.COM, )
RBBRANDRB.COM, RBBRANDSVIP.COM, )
RBBUYGOOD.COM, RBBUYVIPS.COM, )
RBBUYWORLD.COM, RBCHEAPRB.COM, )

RBCHEAPSGO.COM, RBCIO.COM,  )
RBCOOLWAYS.COM, RBCVH.COM,  )
RBCVP.COM, RBCVW.COM, RBCZO.COM,  )
RBCZV.COM, RBDQA.COM, RBDWA.COM,  )
RBENJOYBEST.COM,  )
RBENJOYSHOP.COM, RBEPN.COM,  )
RBEPP.COM, RBESHOPRUN.COM,  )
RBEUGO.COM, RBEUM.COM,  )
RBFIGHTING.COM, RBGFR.COM,  )
RBGGX.COM, RBGLASSES4U.COM,  )
RBGLASSESCA.COM,  )
RBGLASSESFORU.COM,  )
RBGLASSESHOME.COM,  )
RBGLASSESLOVE.COM, RBGQA.COM,  )
RBHEP.COM, RBHJI.COM, RBHKA.COM,  )
RBHOTNEW.COM, RBHQE.COM,  )
RBHYE.COM, RBIDA.COM, RBIGOES.COM, )
RBIIZ.COM, RBIMV.COM, RBIMX.COM,  )
RBIN2016.COM, RB-INDIA.COM,  )
RBISEE.COM, RBKLU.COM, RBKOE.COM,  )
RBLIE.COM, RBLOE.COM,  )
RBLOVEBEST.COM, RBLQA.COM,  )
RBMBRAND.COM, RBMLO.COM,  )
RBMVM.COM, RBMYESHOP.COM,  )
RBNEWGOODS.COM, RBNEWWAY.COM,  )
RBNOL.COM, RBOAI.COM, RBOBS.COM,  )
RBOIU.COM, RBOKSALE.COM,  )
RBONKIND.COM, RBONLINEESHOP.COM,  )
RBONNEW.COM, RBONPOP.COM,  )
RBONSTAR.COM, RBONSUN.COM,  )
RBONSUPER.COM, RBONWELL.COM,  )
RBONWIN.COM, RBOPX.COM,  )
RBOQA.COM, RBOURVIP.COM,  )
RBPICKBUY.COM, RBPICKWAYS.COM,  )
RBQAU.COM, RBQGOOD.COM,  )
RBQPF.COM, RBREALDO.COM,  )
RBSAE.COM, RBSALEGOOD.COM,  )
RBSELLGO.COM, RBSHOPCOOL.COM,  )
RBSHOPDE.COM, RBSHOP-NO.COM,  )
RBSHOPPICK.COM, RBSHOPPOP.COM,  )
RBSHOPSGO.COM, RBSHOPWAY.COM,  )
RB-SINCE1937.COM, RB-SL.COM,  )
RBSTORE-CU.COM, RBSTYLEVIP.COM,  )
RBSUNGLSSMALL.COM,  )
RBSUNGLSSSALE.COM,  )
RBSUPERGO.COM,  )

RBSUPERSTORES.COM, RBTOES.COM, )
RBTOP-CL.COM, RBTOPSBUY.COM, )
RBTOPSHOP.COM, RBUAO.COM, )
RBUDF.COM, RBUOMO.COM, RB-US- )
OUTLET.COM, RBUYE.COM, RBVAS.COM, )
RBVIP-CU.COM, RBVIP-NO.COM, )
RBVIPOP.COM, RBVIPSGOOD.COM, )
RBVIPSHOPS.COM, RBVIPSSALE.COM, )
RBVIPSWAY.COM, RBVLE.COM, )
RBVOM.COM, RBWEDOBUY.COM, )
RBWELLS.COM, RBWKS.COM, )
RBWORLDBUY.COM, )
RBWSHOPPING.COM, RBXES.COM, )
RBXXN.COM, RBXXU.COM, RBYDA.COM, )
RBYEG.COM, RBZGV.COM, RBZIN.COM, )
RBZSTORE.COM, REED GREENOUGH, )
REGISTRANT OF ARGENRB.COM, )
REGISTRANT OF ARGENTRB.COM, )
REGISTRANT OF ARGERB.COM, )
REGISTRANT OF ARGRB.COM, )
REGISTRANT OF ARORB.COM, )
REGISTRANT OF ARSRB.COM, )
REGISTRANT OF ATSRB.COM, )
REGISTRANT OF AUGLASSES.COM, )
REGISTRANT OF AUTRBS.COM, )
REGISTRANT OF CLIRB.COM, )
REGISTRANT OF DEKRB.COM, )
REGISTRANT OF DELRB.COM, )
REGISTRANT OF DEMRB.COM, )
REGISTRANT OF DETRB.COM, )
REGISTRANT OF DEWRB.COM, )
REGISTRANT OF ENGLASSES.COM, )
REGISTRANT OF ESDRB.COM, )
REGISTRANT OF ESLRB.COM, )
REGISTRANT OF ESMRB.COM, )
REGISTRANT OF ESURB.COM, )
REGISTRANT OF ESVRB.COM, )
REGISTRANT OF ESWRB.COM, )
REGISTRANT OF ESZRB.COM, )
REGISTRANT OF EUBRILLE.COM, )
REGISTRANT OF FAVOGLASSES.COM, )
REGISTRANT OF FRNRB.COM, )
REGISTRANT OF GERMANYRB.COM, )
REGISTRANT OF MEXICORB.COM, )
REGISTRANT OF MEXRB.COM, )
REGISTRANT OF MNXRB.COM, )

REGISTRANT OF MXARB.COM, )
REGISTRANT OF MXNRB.COM, )
REGISTRANT OF MXRBMX.COM, )
REGISTRANT OF MXURB.COM, )
REGISTRANT OF NUBRILLE.COM, )
REGISTRANT OF OUBRILLE.COM, )
REGISTRANT OF RBEDE.COM, )
REGISTRANT OF RBGERMANY.COM, )
REGISTRANT OF RBMEXICORB.COM, )
REGISTRANT OF RBMXN.COM, )
REGISTRANT OF RBOEC.COM, )
REGISTRANT OF RBOEE.COM, )
REGISTRANT OF RBSMEXICO.COM, )
REGISTRANT OF RBSMEXICOR.COM, )
REGISTRANT OF RBUDE.COM, )
REGISTRANT OF RB-UKRB.COM, )
REGISTRANT OF SPGAFAS.COM, )
REGISTRANT OF SPNRB.COM, )
REGISTRANT OF TUBRILLE.COM, )
REGISTRANT OF UKXRB.COM, )
REGISTRANT ORGANIZATION:, REN )
CHENGZHI, REN NENG, REN TU, REN )
YUAN, RENE PALEY, )
REPLICASUNGLASSESSTORE.BIZ, )
RICHARD THOMPSON, RIDGWAY KEVIN, )
ROBERT HAMILTON ROBERT HAMILTON, )
ROBERT KRAUSE, RODGERS DOUG, )
ROLFE TRACEY, RONG WANG, ROSNIE )
AB GANI, ROSY, ROUSE JAMES, ROUSLY )
HAUBOER, RYAN HOLMES, SANDREA )
MUSCHETTE, SANTOS JANE, SCHAEFER )
DAN, SHAN DUAN, SHAN HUANG, SHAN )
SHAN CHEN, SHENG CHEN, SHENG LIN, )
SHENG LIU 2, SHI CHOU, SHI MAN, SHI )
ZHONG HUANG, SHILIN SHILIN, SHIME )
LIANG, SIMON NURDING, SLD ADMIN, )
SLIWINSKA GOSIA, SOBIE CHERYL, )
SOLDESS.FR, SONG QIUXIANG, SONG )
QIUXIANG 2, SSUNGLASSES.CO, STARK )
BRIAN, STEPHANE FIORAVANTI, )
STEPHANIE SPARKES SPARKES, )
STUDIORAUS.EU, SUFANG YU, SUFANG )
YU 2, SUMI JANE, SUN JIANMIN, SUN )
JIAO, SUN JIN, SUN WUKONG SUN )
WUKONG, SUNGLASSCB.COM, )
SUNGLASSCHEAPSTORE.COM, )

SUNGLASSESA.CO, SUNGLASSESB.CO, )
SUNGLASSESC.CO, )
SUNGLASSESEDK.COM, )
SUNGLASSESFREE.CC, )
SUNGLASSESG.CO, SUN-GLASSES- )
OUTLET.COM, SUNGLASSES-OUTLET- )
US.COM, SUNGLASSESX.CO, )
SUNGLASSSALE.CO, )
SUNGLASSSHOPSALE.CO, SUNJIANMIN, )
SUROJIT DAS, SUROJIT DAS 2, SUROJIT )
DAS 3, SUSAN LEE, SUZANNE SAGE, )
SWAT68.FR, SYKES CLAIRE, TAN XIAO, )
TECH4AUTO.EU, )
THECOUNTRYDRIVERS.NL, )
THEOKFACTORYSHOP.COM, TIAN NIE, )
TIAN ZHANG, TIERRA LEWIS, TIZIANA )
ZANELLATO, TOBIAS GRUNEWALD, TOM )
LOFOYUR, TONGWEN, )
TOPBRANDGLASS.COM, )
TOPBREATH.COM, )
TOPSUNGLASSONLINE.COM, TURNS )
DOMINIQUE, USA-RB-ONLINE.COM, )
USASUNGLASSES.CO, )
USCHARMINGCO.COM, VANIA DARSA, )
VERDIENVARKEN.NL, VERNON D. )
SIEGFRIED, VINSON PATRICIA, VIVI LAN, )
VOGUESRB.COM, WANG CHAO, WANG )
FEI, WANG MENGWANG MENG, WANG )
RENSHI, WANG TAO, WANG TONG, )
WARDCONSULTING.CA, WATSON JOSE, )
WEI HONG HENG, WEI HUANG, WEI WEI )
PING, WELLINGTON )
MACKEYWELLINGTON MACKEY, )
WENBEN ZHANG, WENBEN ZHOU, )
WENQIANG MO, )
WHOLESALESOCHEAP.NL, WILDER )
SHELDON, WILLIAM MAGILL, WILLIAM )
WILLIAM, WILLIAMS TYLER, WILLIS )
TONY, WU CHENG, WU SI MING, WYNN )
LESLEY, XI JIN HENG FU, XIAN LIN, )
XIANGYANG LI, XIAO CHEN, XIAO HUA )
HU, XIAO JUN DENG, XIAO XIA BAI, XIAO )
XIN XIONG, XIAO ZHENG, XIAOFENG )
ZHONG, XIAOFENGZHONG 2, XIAOWU LI, )
XIAYU ZHI, XIGENG GNE, XIN BEN, XING )
YU LAI, XINGSHAO XING, XINPING CAO, )

8

XINQIAN RHYS, XINQIAN RHYS 2, )
XINQIAN TYNDALL, XINQIAN TYNDALL )
2, XIUYUN LI, XU ZHOU MAO YI, XUE )
MING LI, XUWENQIANG, YAN JING, )
YANFAHUI, YANG JING, YANG LE, YANG )
WEI DONG, YANGQIANG, YANGZHANWU, )
YAO YU, YAOWEN MARK, YE JIA, YE )
SHUZHEN, YI CHEN, YI JING, YIGUO )
HUANG, YIN PEI, YINGAI LI, YIXING MAO, )
YONG XUE BAI, YONG ZHU, YU FENG )
LAI, YU HUI, YU XIA, YU YI CHEN, YU )
ZHAO, YUAN HAI RONG, YUAN MAI, YUE )
JUN BIAN, YUE XIAO, YUELI HE, YUKAI )
WANG, YURA LEE, ZEKE FERGUS, ZENG )
GONG YONG, ZENG XI YUN, ZHANG KAI, )
ZHANG LI, ZHANG LIANYOU, ZHANG )
LIANYOU 2, ZHANG LIANYOU 3, ZHANG )
LIUDONG, ZHANG SHASHA, ZHANG )
SHASHA 2, ZHANG YIYI, ZHANG YUN LAI, )
ZHANGYIYI, ZHANXIAOLONG, ZHAO )
DEQUN, ZHAOXIZHE, ZHEN CAI, ZHENG )
HAN, ZHENG LIANQIN, ZHENG XUESENG, )
ZHENG YAFEI, ZHENG ZHENG, )
ZHENGHUA OUYANG, ZHENXIONG PING, )
ZHENYONG ZHANG, ZHENYONGZHANG )
2, ZHI YU CHANG, ZHILINWU, ZHOU )
DAMING, ZHOU JIE, ZHOU MING, ZHOU SI )
HAI, ZI XI BAI, ZI XIN CHEN, ZILAN JU, )
ZILAN JU 2, ZONG LING CHAI, ZUO TENG )
CHANG HONG, ZUO TENG DUN, )
ZUOTENGDUN, JOINUS2010, )
KAIWEHK2014, KANGBOOPTICAL, )
KANGZHEJUN676503_3, KEEPLOVING1986, )
KUGOU-HK, LEBRUC_98, LEELEELEEL, )
LESCO_SHOP, LIN0901, LINSIMIN88_3, )
LOVE-2016, MARTINSHOP2015, MEETING- )
CHARM, MOST-FAMOUS, MOUSESTORE- )
CN, NEVERLAND-USA, PROFESSIONAL )
SPORTS EQUIPMENT MALL, QINYONG236- )
4, QIWEI567, RENTAN80, RRTERYRE484, )
SHAOYUDUN12, SHENZHEN EVERFAR )
GREEN SOLUTION CO., LIMITED, )
SHENZHEN GLASSES HEARTS IMP&EXP )
CO.,LTD, SHENZHEN SS SUNGLASSES )
INVESTMENT CO., LTD., SHENZHEN )
TENGTU TRADE CO., LTD., SNAKE-QY, )

9

STARTFROMHERE123, SUNNY-2016888, )
TAIZHOU YICHENG GLASSES CO., LTD., )
TJF SSMH, TRAIL-BLAZER21, TRENDY- )
CANDY, TUTTOAU, )
ULTIMATEPRODUCT12, UNREAD-DESIGN, )
VETERANS_2012, VEZHUAN_0, WENZHOU )
REDLUCKY GLASSES EC STORE, )
WENZHOU ZHICHENG OPTICAL MFY. CO., )
LTD., WUXI STOTER IMPORT AND )
EXPORT COMPANY LTD., )
XI5593325LANDIH2, XIAMEN TENGQIAO )
APPAREL, XINGHAIGLASSES, )
YUANHONGYU141105_3, YUN_201502, )
ZACHCHAN1989, and )
ZHOUYUEFAN064631-4 )
 )
     Defendants. )
 )

## AMENDED COMPLAINT

Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. (together, "Plaintiffs") hereby bring

the present action against XIA YU, NEIL MARINO, NEWRAYBANSALE.COM, NICHOLAS

GANDY, NKJO, NOWSHOPPING.CO, OAKABEST.COM, OAKABUYHOT.COM,

OAKACOOL.COM, OAKAFAN.COM, OAKAGOOD.COM, OAKAHOT.COM,

OAKAKIND.COM, OAKALIKE.COM, OAKALINK.COM, OAKALOVE.COM,

OAKAMAZONGO.COM, OAKANEW.COM, OAKANVIP.COM, OAKAPOP.COM,

OAKAREAL.COM, OAKASALE.COM, OAKASELL.COM, OAKASKY.COM,

OAKASTAR.COM, OAKATOP.COM, OAKAUP.COM, OAKAVIP.COM,

OAKAWELL.COM, OAKAWIN.COM, OAKB2CBRAND.COM, OAKBESTGOGO.COM,

OAKBIGLOVE.COM, OAKBIGSTORE.COM, OAKBIGTOP.COM,

OAKBRANDBUY.COM, OAKBRANDOAK.COM, OAKBRANDSVIP.COM,

OAKBUYBEST.COM, OAKBUYGOOD.COM, OAKBUYSHOP.COM,

OAKBUYVIPS.COM, OAKBUYWORLD.COM, OAKCALL.COM, OAKCBEST.COM,

OAKCBIG.COM, OAKCBUY.COM, OAKCEYE.COM, OAKCFAN.COM, OAKCFIND.COM, OAKCFUN.COM, OAKCGET.COM, OAKCGO.COM, OAKCHEAPOAK.COM, OAKCHEAPSGO.COM, OAKCHERE.COM, OAKCHIGH.COM, OAKCHOT.COM, OAKCKEEP.COM, OAKCLENS.COM, OAKCLINK.COM, OAKCLOOK.COM, OAKCNICE.COM, OAKCONLY.COM, OAKCOOLBUY.COM, OAKCOOLEBUY.COM, OAKCOOLWAYS.COM, OAKCPOP.COM, OAKCREAL.COM, OAKCSELL.COM, OAKCSHOW.COM, OAKCSKY.COM, OAKCSPORT.COM, OAKCSTAR.COM, OAKCSTORE.COM, OAKCSTYLE.COM, OAKCSUN.COM, OAKCSWEET.COM, OAKCUS.COM, OAKCWAY.COM, OAKCWEAR.COM, OAKCWELL.COM, OAKCWIN.COM, OAKCZONE.COM, OAKDOCHEAP.COM, OAKDOREAL.COM, OAKDOSHOP.COM, OAKDOUP.COM, OAKENJOYBEST.COM, OAKENJOYSHOP.COM, OAKESHOPBUY.COM, OAKESHOPGO.COM, OAKESHOPRUN.COM, OAKESTARS.COM, OAKEUSUPER.COM, OAKEWAY.COM, OAKFANS.NET, OAKFIGHTING.COM, OAKGETOPS.COM, OAKGLOVE.COM, OAKGMALL.COM, OAKGOEBUY.COM, OAKGOGOOD.COM, OAKGOODMALL.COM, OAKGOPOP.COM, OAKGOTO.COM, OAKHITS.COM, OAKHOTEBUY.COM, OAKHOTESHOP.COM, OAKHOTSTYLE.COM, OAKINART.COM, OAKINBUY.COM, OAKINMALL.COM, OAKINMIX.COM, OAKINNEW.COM, OAKINTOP.COM, OAKINWAY.COM, OAKINWIN.COM, OAKINZONE.COM, OAKIONE.COM, OAKIWEARS.COM, OAKJSHOP.COM, OAKKCHEAP.COM, OAKKLOVE.COM, OAKKSHOP.COM, OAKLEYLOVER.COM, OAKLEYSUNGLASSES-OUTLET.NAME, OAKLOVEBEST.COM, OAKMBRAND.COM, OAKMSHOP.COM, OAKMSTORE.COM, OAKMYESHOP.COM, OAKNEWGOODS.COM, OAKNEWUP.COM, OAKOFANS.COM,

OAKOHOTS.COM, OAKOMGCHEAP.COM, OAKONLIKE.COM, OAKONLYBUY.COM,

OAKONLYY.COM, OAKOURSTORE.COM, OAKOWINS.COM, OAKPICKBUY.COM,

OAKPICKCOOL.COM, OAKPICKSALE.COM, OAKPICKWAYS.COM, OAKQBUY.COM,

OAKQONLINE.COM, OAKQOUTLET.COM, OAKQPICK.COM, OAKQSPORT.COM,

OAKREALDO.COM, OAKRUP.COM, OAKSALEGOOD.COM, OAKSALESHOP.COM,

OAKSELLGO.COM, OAKSHOPCHEAP.COM, OAKSHOPCOOL.COM,

OAKSHOPNEW.COM, OAKSHOPNOW.COM, OAKSHOPPICK.COM,

OAKSHOPPING.COM, OAKSHOPPOP.COM, OAKSHOPSGO.COM,

OAKSHOPWAY.COM, OAKSHOPZONE.COM, OAKSTYLEVIP.COM,

OAKSUPERBUY.COM, OAKSUPERGO.COM, OAKSWIND.COM, OAKTOBEST.COM,

OAKTOCOOL.COM, OAKTOFAN.COM, OAKTOFUN.COM, OAKTOGOOD.COM,

OAKTOHOT.COM, OAKTOLIKE.COM, OAKTOLOVE.COM, OAKTONEW.COM,

OAKTOPOP.COM, OAKTOPSBUY.COM, OAKTOSELL.COM, OAKTOSTAR.COM,

OAKTOVIP.COM, OAKTOWAY.COM, OAKTOWEAR.COM, OAKTOWIN.COM,

OAKTOZONE.COM, OAKUCHEAP.COM, OAKUFUN.COM, OAKUGO.COM,

OAKUHOT.COM, OAKULOVE.COM, OAKUNEW.COM, OAKUPFUN.COM,

OAKUPHOT.COM, OAKUPIN.COM, OAKUPVIP.COM, OAKUTOP.COM,

OAKUVIP.COM, OAKUWELL.COM, OAKVALL.COM, OAKVIPBEST.COM,

OAKVIPCHEAP.COM, OAKVIPCOOL.COM, OAKVIPPICK.COM, OAKVIPSALES.COM,

OAKVIPSGOOD.COM, OAKVIPSSALE.COM, OAKVIPSWAY.COM, OAKVPOP.COM,

OAKWEDOBUY.COM, OAKWEHOTS.COM, OAKWENEW.COM, OAKWEPICK.COM,

OAKWEPOP.COM, OAKWESALE.COM, OAKWETOP.COM, OAKWEUP.COM,

OAKWEVIPS.COM, OAKWEWAY.COM, OAKWORLDBUY.COM,

OAKWSHOPPING.COM, OAKYSHOP.COM, OAKZONEVIP.COM, OKBSD.COM, OKESHOPONLINE.COM, OKEYEWEARSHOP.COM, OKFSD.COM, OKFWA.COM, OKGLASSES4U.COM, OKGLASSESHOME.COM, OKGLK.COM, OKIKD.COM, OKKE-DEWI.NL, OKMFE.COM, OKNEWBEST.COM, OKNEWKIND.COM, OKPTH.COM, OKQFH.COM, OKQOW.COM, OKRFS.COM, OKSGY.COM, OKSUNGLASSESTORE.COM, OKSUNGLASSESTORES.COM, OKSUNGLASSMALL.COM, OKSUPERSHOP.COM, OKVDE.COM, OKVIPESHOP.COM, OKWQF.COM, OKYEC.COM, OKYNI.COM, ONLINESTYLES.XYZ, ONLYOKGLASSES.COM, PAGEONEAYEARINTHENEWYORKTIMES.COM, PAINTER COLIN, PALENCIA GABRIEL, PALENCIA GABRIEL 2, PARELVANTEXEL.NL, PEN HAILAO, PENG LIU, PENNY T. MCINTYRE, PERKEDLABS.CA, PETER POWELL, PHILIPP EBERSBACH, PHILLIPS COLEMAN, PHILLIPS COLEMAN 2, PHONE-ETHIQUE.FR, PING LI, POPONLINE.CC, PU XIAO, QI QIANG, QIAN HUANG, RAICES MAGGIE, RAKOVSKAJA ANNA, RASAY LILIA, RASAY LILIA 2, RASAY LILIA 3, RAYBAN-6PM.COM, RAYBANCOOLER.COM, RAYBANINR.COM, RAYBANINUSA.COM, RAYBANLOVER.COM, RAYBANOKSTORE.COM, RAYBAN-ORIGINALS.EU, RAY-BANPAS-CHER.COM, RAYBAN-SALE.COM, RAYBANTOPCA.COM, RAYBOKSTORE.COM, RB1937-OS.COM, RB1937US.COM, RBABUYHOT.COM, RBADA.COM, RBAIK.COM, RBAMAZONGO.COM, RBAOM.COM, RBAVO.COM, RBAZQ.COM, RBBESTGOGO.COM, RBBRANDBUY.COM, RBBRANDRB.COM, RBBRANDSVIP.COM, RBBUYGOOD.COM, RBBUYVIPS.COM, RBBUYWORLD.COM, RBCHEAPRB.COM, RBCHEAPSGO.COM, RBCIO.COM, RBCOOLWAYS.COM, RBCVH.COM, RBCVP.COM, RBCVW.COM, RBCZO.COM,

RBCZV.COM, RBDQA.COM, RBDWA.COM, RBENJOYBEST.COM, RBENJOYSHOP.COM, RBEPN.COM, RBEPP.COM, RBESHOPRUN.COM, RBEUGO.COM, RBEUM.COM, RBFIGHTING.COM, RBGFR.COM, RBGGX.COM, RBGLASSES4U.COM, RBGLASSESCA.COM, RBGLASSESFORU.COM, RBGLASSESHOME.COM, RBGLASSESLOVE.COM, RBGQA.COM, RBHEP.COM, RBHJI.COM, RBHKA.COM, RBHOTNEW.COM, RBHQE.COM, RBHYE.COM, RBIDA.COM, RBIGOES.COM, RBIIZ.COM, RBIMV.COM, RBIMX.COM, RBIN2016.COM, RB-INDIA.COM, RBISEE.COM, RBKLU.COM, RBKOE.COM, RBLIE.COM, RBLOE.COM, RBLOVEBEST.COM, RBLQA.COM, RBMBRAND.COM, RBMLO.COM, RBMVM.COM, RBMYESHOP.COM, RBNEWGOODS.COM, RBNEWWAY.COM, RBNOL.COM, RBOAI.COM, RBOBS.COM, RBOIU.COM, RBOKSALE.COM, RBONKIND.COM, RBONLINEESHOP.COM, RBONNEW.COM, RBONPOP.COM, RBONSTAR.COM, RBONSUN.COM, RBONSUPER.COM, RBONWELL.COM, RBONWIN.COM, RBOPX.COM, RBOQA.COM, RBOURVIP.COM, RBPICKBUY.COM, RBPICKWAYS.COM, RBQAU.COM, RBQGOOD.COM, RBQPF.COM, RBREALDO.COM, RBSAE.COM, RBSALEGOOD.COM, RBSELLGO.COM, RBSHOPCOOL.COM, RBSHOPDE.COM, RBSHOP-NO.COM, RBSHOPPICK.COM, RBSHOPPOP.COM, RBSHOPSGO.COM, RBSHOPWAY.COM, RB-SINCE1937.COM, RB-SL.COM, RBSTORE-CU.COM, RBSTYLEVIP.COM, RBSUNGLSSMALL.COM, RBSUNGLSSSALE.COM, RBSUPERGO.COM, RBSUPERSTORES.COM, RBTOES.COM, RBTOP-CL.COM, RBTOPSBUY.COM, RBTOPSHOP.COM, RBUAO.COM, RBUDF.COM, RBUOMO.COM, RB-US-OUTLET.COM, RBUYE.COM, RBVAS.COM, RBVIP-CU.COM, RBVIP-NO.COM, RBVIPOP.COM, RBVIPSGOOD.COM, RBVIPSHOPS.COM, RBVIPSSALE.COM,

RBVIPSWAY.COM, RBVLE.COM, RBVOM.COM, RBWEDOBUY.COM, RBWELLS.COM, RBWKS.COM, RBWORLDBUY.COM, RBWSHOPPING.COM, RBXES.COM, RBXXN.COM, RBXXU.COM, RBYDA.COM, RBYEG.COM, RBZGV.COM, RBZIN.COM, RBZSTORE.COM, REED GREENOUGH, REGISTRANT OF ARGENRB.COM, REGISTRANT OF ARGENTRB.COM, REGISTRANT OF ARGERB.COM, REGISTRANT OF ARGRB.COM, REGISTRANT OF ARORB.COM, REGISTRANT OF ARSRB.COM, REGISTRANT OF ATSRB.COM, REGISTRANT OF AUGLASSES.COM, REGISTRANT OF AUTRBS.COM, REGISTRANT OF CLIRB.COM, REGISTRANT OF DEKRB.COM, REGISTRANT OF DELRB.COM, REGISTRANT OF DEMRB.COM, REGISTRANT OF DETRB.COM, REGISTRANT OF DEWRB.COM, REGISTRANT OF ENGLASSES.COM, REGISTRANT OF ESDRB.COM, REGISTRANT OF ESLRB.COM, REGISTRANT OF ESMRB.COM, REGISTRANT OF ESURB.COM, REGISTRANT OF ESVRB.COM, REGISTRANT OF ESWRB.COM, REGISTRANT OF ESZRB.COM, REGISTRANT OF EUBRILLE.COM, REGISTRANT OF FAVOGLASSES.COM, REGISTRANT OF FRNRB.COM, REGISTRANT OF GERMANYRB.COM, REGISTRANT OF MEXICORB.COM, REGISTRANT OF MEXRB.COM, REGISTRANT OF MNXRB.COM, REGISTRANT OF MXARB.COM, REGISTRANT OF MXNRB.COM, REGISTRANT OF MXRBMX.COM, REGISTRANT OF MXURB.COM, REGISTRANT OF NUBRILLE.COM, REGISTRANT OF OUBRILLE.COM, REGISTRANT OF RBEDE.COM, REGISTRANT OF RBGERMANY.COM, REGISTRANT OF RBMEXICORB.COM, REGISTRANT OF RBMXN.COM, REGISTRANT OF RBOEC.COM, REGISTRANT OF RBOEE.COM, REGISTRANT OF RBSMEXICO.COM, REGISTRANT OF RBSMEXICOR.COM, REGISTRANT OF RBUDE.COM, REGISTRANT OF RB-UKRB.COM, REGISTRANT OF

SPGAFAS.COM, REGISTRANT OF SPNRB.COM, REGISTRANT OF TUBRILLE.COM, REGISTRANT OF UKXRB.COM, REGISTRANT ORGANIZATION:, REN CHENGZHI, REN NENG, REN TU, REN YUAN, RENE PALEY, REPLICASUNGLASSESSTORE.BIZ, RICHARD THOMPSON, RIDGWAY KEVIN, ROBERT HAMILTON ROBERT HAMILTON, ROBERT KRAUSE, RODGERS DOUG, ROLFE TRACEY, RONG WANG, ROSNIE AB GANI, ROSY, ROUSE JAMES, ROUSLY HAUBOER, RYAN HOLMES, SANDREA MUSCHETTE, SANTOS JANE, SCHAEFER DAN, SHAN DUAN, SHAN HUANG, SHAN SHAN CHEN, SHENG CHEN, SHENG LIN, SHENG LIU 2, SHI CHOU, SHI MAN, SHI ZHONG HUANG, SHILIN SHILIN, SHIME LIANG, SIMON NURDING, SLD ADMIN, SLIWINSKA GOSIA, SOBIE CHERYL, SOLDESS.FR, SONG QIUXIANG, SONG QIUXIANG 2, SSUNGLASSES.CO, STARK BRIAN, STEPHANE FIORAVANTI, STEPHANIE SPARKES SPARKES, STUDIORAUS.EU, SUFANG YU, SUFANG YU 2, SUMI JANE, SUN JIANMIN, SUN JIAO, SUN JIN, SUN WUKONG SUN WUKONG, SUNGLASSCB.COM, SUNGLASSCHEAPSTORE.COM, SUNGLASSESA.CO, SUNGLASSESB.CO, SUNGLASSESC.CO, SUNGLASSESEDK.COM, SUNGLASSESFREE.CC, SUNGLASSESG.CO, SUN-GLASSES-OUTLET.COM, SUNGLASSES-OUTLET-US.COM, SUNGLASSESX.CO, SUNGLASSSALE.CO, SUNGLASSSHOPSALE.CO, SUNJIANMIN, SUROJIT DAS, SUROJIT DAS 2, SUROJIT DAS 3, SUSAN LEE, SUZANNE SAGE, SWAT68.FR, SYKES CLAIRE, TAN XIAO, TECH4AUTO.EU, THECOUNTRYDRIVERS.NL, THEOKFACTORYSHOP.COM, TIAN NIE, TIAN ZHANG, TIERRA LEWIS, TIZIANA ZANELLATO, TOBIAS GRUNEWALD, TOM LOFOYUR, TONGWEN, TOPBRANDGLASS.COM, TOPBREATH.COM, TOPSUNGLASSONLINE.COM, TURNS DOMINIQUE, USA-RB-ONLINE.COM,

USASUNGLASSES.CO, USCHARMINGCO.COM, VANIA DARSA, VERDIENVARKEN.NL, VERNON D. SIEGFRIED, VINSON PATRICIA, VIVI LAN, VOGUESRB.COM, WANG CHAO, WANG FEI, WANG MENGWANG MENG, WANG RENSHI, WANG TAO, WANG TONG, WARDCONSULTING.CA, WATSON JOSE, WEI HONG HENG, WEI HUANG, WEI WEI PING, WELLINGTON MACKEYWELLINGTON MACKEY, WENBEN ZHANG, WENBEN ZHOU, WENQIANG MO, WHOLESALESOCHEAP.NL, WILDER SHELDON, WILLIAM MAGILL, WILLIAM WILLIAM, WILLIAMS TYLER, WILLIS TONY, WU CHENG, WU SI MING, WYNN LESLEY, XI JIN HENG FU, XIAN LIN, XIANGYANG LI, XIAO CHEN, XIAO HUA HU, XIAO JUN DENG, XIAO XIA BAI, XIAO XIN XIONG, XIAO ZHENG, XIAOFENG ZHONG, XIAOFENGZHONG 2, XIAOWU LI, XIAYU ZHI, XIGENG GNE, XIN BEN, XING YU LAI, XINGSHAO XING, XINPING CAO, XINQIAN RHYS, XINQIAN RHYS 2, XINQIAN TYNDALL, XINQIAN TYNDALL 2, XIUYUN LI, XU ZHOU MAO YI, XUE MING LI, XUWENQIANG, YAN JING, YANFAHUI, YANG JING, YANG LE, YANG WEI DONG, YANGQIANG, YANGZHANWU, YAO YU, YAOWEN MARK, YE JIA, YE SHUZHEN, YI CHEN, YI JING, YIGUO HUANG, YIN PEI, YINGAI LI, YIXING MAO, YONG XUE BAI, YONG ZHU, YU FENG LAI, YU HUI, YU XIA, YU YI CHEN, YU ZHAO, YUAN HAI RONG, YUAN MAI, YUE JUN BIAN, YUE XIAO, YUELI HE, YUKAI WANG, YURA LEE, ZEKE FERGUS, ZENG GONG YONG, ZENG XI YUN, ZHANG KAI, ZHANG LI, ZHANG LIANYOU, ZHANG LIANYOU 2, ZHANG LIANYOU 3, ZHANG LIUDONG, ZHANG SHASHA, ZHANG SHASHA 2, ZHANG YIYI, ZHANG YUN LAI, ZHANGYIYI, ZHANXIAOLONG, ZHAO DEQUN, ZHAOXIZHE, ZHEN CAI, ZHENG HAN, ZHENG LIANQIN, ZHENG XUESENG, ZHENG YAFEI, ZHENG ZHENG, ZHENGHUA OUYANG,

ZHENXIONG PING, ZHENYONG ZHANG, ZHENYONGZHANG 2, ZHI YU CHANG, ZHILINWU, ZHOU DAMING, ZHOU JIE, ZHOU MING, ZHOU SI HAI, ZI XI BAI, ZI XIN CHEN, ZILAN JU, ZILAN JU 2, ZONG LING CHAI, ZUO TENG  CHANG HONG, ZUO TENG  DUN, ZUOTENGDUN, JOINUS2010, KAIWEHK2014, KANGBOOPTICAL, KANGZHEJUN676503_3, KEEPLOVING1986, KUGOU-HK, LEBRUC_98, LEELEELEEL, LESCO_SHOP, LIN0901, LINSIMIN88_3, LOVE-2016, MARTINSHOP2015, MEETING-CHARM, MOST-FAMOUS, MOUSESTORE-CN, NEVERLAND-USA, PROFESSIONAL SPORTS EQUIPMENT MALL, QINYONG236-4, QIWEI567, RENTAN80, RRTERYRE484, SHAOYUDUN12, SHENZHEN EVERFAR GREEN SOLUTION CO., LIMITED, SHENZHEN GLASSES HEARTS IMP&EXP CO.,LTD, SHENZHEN SS SUNGLASSES INVESTMENT CO., LTD., SHENZHEN TENGTU TRADE CO., LTD., SNAKE-QY, STARTFROMHERE123, SUNNY-2016888, TAIZHOU YICHENG GLASSES CO., LTD., TJF SSMH, TRAIL-BLAZER21, TRENDY-CANDY, TUTTOAU, ULTIMATEPRODUCT12, UNREAD-DESIGN, VETERANS_2012, VEZHUAN_0, WENZHOU REDLUCKY GLASSES EC STORE, WENZHOU ZHICHENG OPTICAL MFY. CO., LTD., WUXI STOTER IMPORT AND EXPORT COMPANY LTD., XI5593325LANDIH2, XIAMEN TENGQIAO APPAREL, XINGHAIGLASSES, YUANHONGYU141105_3, YUN_201502, ZACHCHAN1989, and ZHOUYUEFAN064631-4 identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under

the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiffs' trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit products bearing counterfeit versions of Plaintiffs' trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputations and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including eyewear, using counterfeit versions of Plaintiffs' federally registered trademarks (the "Counterfeit Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling genuine products, while

19

actually selling Counterfeit Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

**Plaintiff Luxottica**

4. Plaintiff Luxottica Group S.p.A. ("Luxottica") is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114. Luxottica is, in part, engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear products under federally registered trademarks, including, but not limited to, the RAY-BAN® family of marks.

5. For generations, the Ray-Ban brand has been the undisputed world leader in the field of sun and prescription eyewear products, including those which prominently display the

famous, internationally recognized, and federally registered RAY-BAN trademarks (collectively, the "Ray-Ban Products").

6.     Ray-Ban Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design.  Among the purchasing public, genuine Ray-Ban Products are instantly recognizable as such.  In the United States and around the world, the Ray-Ban brand has come to symbolize high quality, and Ray-Ban Products are among the most recognizable eyewear in the world.  Ray-Ban Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut and high-end department stores, and through the official Ray-Ban.com website, which was launched in 1995 and began e-commerce sales in 2009.

7.     Luxottica and its predecessors began using the RAY-BAN trademarks in 1937 and have continuously sold eyewear under the RAY-BAN and other trademarks (collectively, the "RAY-BAN Trademarks").  As a result of this long-standing use, strong common law trademark rights have amassed in the RAY-BAN Trademarks.  Luxottica's use of the marks has also built substantial goodwill in and to the RAY-BAN Trademarks.  The RAY-BAN Trademarks are famous marks and valuable assets of Luxottica.  Ray-Ban Products typically include at least one of the registered RAY-BAN Trademarks.

8.     Several of the RAY-BAN Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 595,513 | WAYFARER | For: Sunglasses in class 9. |

| | | |
|---|---|---|
| 650,499 |  | For: Sunglasses, shooting glasses, and ophthalmic lenses in class 9. |
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |
| 1,093,658 |  | For: Ophthalmic products and accessories, namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |
| 1,320,460 |  | For: Sunglasses and carrying cases therefor in class 9. |
| 1,490,305 | RAY-BAN | For: Clothing, namely, t-shirts in class 25. |
| 1,537,974 | CLUBMASTER | For: Sunglasses in class 9. |

| 1,726,955 |  | For: Bags; namely, tote, duffle and all purpose sports bags in class 18.<br><br>For: Cloths for cleaning ophthalmic products in class 21.<br><br>For: Clothing and headgear, namely, hats in class 25. |
| --- | --- | --- |
| 2,718,485 | RAY-BAN | For: Goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18.<br><br>For: Clothing for men and women, namely, polo shirts; headgear, namely, berets and caps in class 25. |
| 3,522,603 |  | For: Sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses in class 9. |

9.      The above U.S. registrations for the RAY-BAN Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.   The registrations for the RAY-BAN Trademarks constitute *prima facie* evidence of their validity and of Luxottica's exclusive right to use the RAY-BAN Trademarks pursuant to 15 U.S.C. § 1057 (b).   True and correct copies of the United States Registration Certificates for the above-listed RAY-BAN Trademarks are attached hereto as **Exhibit 1**.

10.      The RAY-BAN Trademarks are distinctive when applied to the Ray-Ban Products, signifying to the purchaser that the products come from Luxottica and are manufactured to Luxottica's quality standards.   Whether Luxottica manufactures the products

itself or contracts with others to do so, Luxottica has ensured that products bearing the RAY-BAN Trademarks are manufactured to the highest quality standards.

11.     The RAY-BAN Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Ray-Ban Products have enabled the Ray-Ban brand to achieve widespread recognition and fame and have made the RAY-BAN Trademarks some of the most well-known marks in the sun and prescription eyewear industry.  The widespread fame, outstanding reputation, and significant goodwill associated with the Ray-Ban brand have made the RAY-BAN Trademarks valuable assets of Luxottica.

12.     Luxottica has expended substantial time, money, and other resources in advertising and promoting the RAY-BAN Trademarks.  In fact, Luxottica has expended millions of dollars annually in advertising, promoting and marketing featuring the RAY-BAN Trademarks.  Ray-Ban Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs.  As a result, products bearing the RAY-BAN Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Luxottica.  Ray-Ban Products have become among the most popular of their kind in the U.S. and the world.  The RAY-BAN Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks.  *Id.*  As such, the goodwill associated with the RAY-BAN Trademarks is of incalculable and inestimable value to Luxottica.

13.     Genuine Ray-Ban Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Ray-Ban brand.

14.     Since at least as early as 2009, genuine Ray-Ban Products have been promoted and sold at the official Ray-Ban.com website.  Sales of Ray-Ban Products via the Ray-Ban.com website are significant.   The Ray-Ban.com website features proprietary content, images and designs exclusive to the Ray-Ban brand.

**Plaintiff Oakley, Inc.**

15.     Plaintiff Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

16.     Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica.

17.     Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including OAKLEY and various Icon logos (collectively, the "Oakley Products"). Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design.  Among the purchasing public, genuine Oakley Products are instantly recognizable as such.  In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley Products are among the most recognizable eyewear, headwear, footwear, outerwear, jackets and apparel in the world.

18.     Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official oakley.com website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.

19.    Oakley incorporates a variety of distinctive marks in the design of its various Oakley Products.  As a result of its long-standing use, Oakley owns common law trademark rights in its OAKLEY Trademarks.  Oakley has also registered its trademarks with the United States Patent and Trademark Office.  Oakley Products typically include at least one of Oakley's registered trademarks.  Often several Oakley marks are displayed on a single Oakley Product. Oakley has registered its trademarks with the United States Patent and Trademark Office. Oakley uses its trademarks in connection with the marketing of its Oakley Products, including the following marks which are collectively referred to as the "OAKLEY Trademarks."

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 1,519,823 | OAKLEY | For: Athletic bags in class 18. |
| 1,521,599 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 1,522,692 | OAKLEY | For: Clothing, namely, shirts and hats in class 25. |
| 1,552,583 | OAKLEY | For: Goggles in class 9. |
| 2,293,046 | OAKLEY | For: Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all purpose sports footwear and socks in class 25. |
| 2,409,789 | OAKLEY | For: Jewelry and time pieces, namely, watches in class 14. |
| 3,153,943 | OAKLEY | For: Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and reviewing text, data and audio files on portable digital electronic |

| | | |
|---|---|---|
| | | devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules in class 9. |
| 3,771,517 | OAKLEY | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |
| 1,980,039 | OAKLEY | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing, headwear and footwear, namely T-shirts, sweatshirts, blouses, sweaters, sport shirts, jerseys, shorts, trousers, pants, sweatpants, ski pants, racing pants, jeans, coats, vests, jackets, swimwear, hats, visors, caps, gloves, belts, socks, sandals and shoes in class 25. |
| 1,356,297 | OAKLEY | For: Goggles, sunglasses, protective pads for elbows, feet and knees in class 9.<br>For: Clothing - namely t-shirts; gloves; racing pants; hats; sweatshirts; sport shirts, jackets, jeans, jerseys and ski pants, jackets, hats, gloves and socks in |

| | | |
|---|---|---|
| | | class 25. |
| 1,519,596 | **OAKLEY** | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,143,623 | *Oakley* | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9.<br><br>For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swim trunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 1,902,660 | OAKLEY | For: Printed material, namely decals and stickers in class 16. |
| 1,990,262 | OAKLEY | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 3,496,633 | | For: clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely, wetsuit booties, shoes, sandals, |

28

| | | |
|---|---|---|
| | | athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 2,301,660 |  | For: Jewelry and time pieces, namely, watches in class 14. |
| 3,331,124 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories; and protective clothing, namely, racing pants in class 9.<br><br>For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 3,151,994 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 3,771,516 |  | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |

| | | |
|---|---|---|
| 3,785,868 |  | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,300,245 |  | For Clothing, namely, T-shirts, beachwear, blouses, sports shirts, jerseys, shorts, shirts, pants, racing pants, ski pants, vests, jackets, sweaters, pullovers, coats, sweatpants, sweatshirts, headwear, namely, hats, caps, and footwear, namely, shoes, athletic footwear, all purpose sports footwear in class 25. |
| 2,207,455 |  | For: luggage, duffle bags, athletic bags, luggage bags with rollers, wrist mounted carryall bags, tote bags, all purpose sports bags, knapsacks and backpacks in class 18. |
| 2,209,416 |  | For: Protective and/or anti-glare eyewear, namely, goggles, and their parts and accessories, namely, cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing, headwear and footwear, namely, T-shirts, hats, shorts, shirts, pants, jackets, sweatshirts, shoes, and pullovers in class 25. |
| 1,927,106 |  | For: printed material, namely decals and stickers in class 16. |
| 1,984,501 |  | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |

| | | |
|---|---|---|
| | | For: Clothing and headwear, namely T-shirts, sweatshirts, jackets, hats, and caps in class 25. |
| 1,904,181 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips, cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 3,693,071 |  | For: Traveling bags and backpacks in class 18. |
| 4,407,750 | CROSSLINK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |
| 3,733,882 | IRIDIUM | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,827,569 | JAWBREAKER | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 4,407,749 | RADARLOCK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam |

31

| | | |
|---|---|---|
| | | strips; cases specially adapted for eyewear and their parts and accessories in class 9. |
| 3,489,952 | OIL RIG | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,194,197 | FROGSKINS | For: Eyewear, namely sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |

20.     The above registrations for the OAKLEY Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The OAKLEY Trademarks have been used exclusively and continuously by Oakley, some since at least as early as 1975, and have never been abandoned.  Attached hereto as **Exhibit 2** are true and correct copies of the United States Registration Certificates for the OAKLEY Trademarks included in the above table.  The registrations for the OAKLEY Trademarks constitute *prima facie* evidence of their validity and of Oakley's exclusive right to use the OAKLEY Trademarks pursuant to 15 U.S.C. § 1057(b).

21.     The OAKLEY Trademarks are exclusive to Oakley, and are displayed extensively on Oakley Products and in Oakley's marketing and promotional materials. Typically, at least one of the OAKLEY Trademarks are included on Oakley Products.  Oakley Products have long been among the most popular eyewear in the world and have been extensively promoted and advertised at great expense.  In fact, Oakley has expended millions of dollars annually in advertising, promoting and marketing featuring the OAKLEY Trademarks.  Oakley Products have also been the subject of extensive unsolicited publicity resulting from their high-quality,

innovative designs and renown as desired luxury items. Because of these and other factors, the Oakley name and the OAKLEY Trademarks have become famous throughout the United States.

22. The OAKLEY Trademarks are distinctive when applied to the Oakley Products, signifying to the purchaser that the products come from Oakley and are manufactured to Oakley's quality standards. Whether Oakley manufactures the products itself or licenses others to do so, Oakley has ensured that products bearing its trademarks are manufactured to the highest quality standards. The OAKLEY Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the OAKLEY Trademarks is of incalculable and inestimable value to Oakley.

23. Since at least as early as 1995, Oakley has operated a website where it promotes and sells genuine Oakley Products at oakley.com. Sales of Oakley Products via the oakley.com website represent a significant portion of Oakley's business. The oakley.com website features proprietary content, images and designs exclusive to Oakley.

24. Oakley's innovative marketing and product designs have enabled Oakley to achieve widespread recognition and fame and have made the OAKLEY Trademarks some of the most well-known marks in the eyewear and apparel industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Oakley brand have made the OAKLEY Trademarks valuable assets of Oakley.

25. Oakley has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the OAKLEY Trademarks. As a result, products bearing the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Oakley is a multi-

million dollar operation, and Oakley Products have become among the most popular of their kind in the world.

26.     The RAY-BAN Trademarks and the OAKLEY Trademarks are collectively referred to herein as "Plaintiffs' Trademarks."

27.     The Ray-Ban Products and the Oakley Products are collectively referred to herein as "Plaintiffs' Products."

**The Defendants**

28.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.   Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.   Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Products to consumers within the United States, including the State of Illinois.

29.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the Plaintiffs' Trademarks in the same transaction, occurrence, or series of transactions or occurrences.   Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiffs to learn Defendants' true identities and the exact interworking of their massive counterfeit network.   In the event that Defendants provide additional credible

information regarding their identities, Plaintiffs will take appropriate steps to amend the Amended Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

30. The success of Plaintiffs' brands has resulted in their significant counterfeiting. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiffs have identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Products to consumers in this Judicial District and throughout the United States. Despite Plaintiffs' enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

31. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the Plaintiffs' Trademarks into the URL, and the Defendant Internet Stores often include content

and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.  Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos.  Plaintiffs have not licensed or authorized Defendants to use any of the Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiffs' Products.

32.    Many Defendants also deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiffs' Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Plaintiffs' Products.  Other Defendants only show Plaintiffs' Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Products.

33.    Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.  Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.  On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities

listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

34.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Plaintiffs' official ray-ban.com and oakley.com websites.

35.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for

ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

36. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

37. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois.

38. Defendants' use of Plaintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

38

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

39.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 38.

40.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  Plaintiffs' Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiffs' Products sold or marketed under Plaintiffs' Trademarks.

41.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of Plaintiffs' Trademarks without Plaintiffs' permission.

42.     Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks. Plaintiffs' United States Registrations for their respective Plaintiffs' Trademarks (Exhibits 1-2) are in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks.  Defendants' willful, intentional and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

43.     Defendants'  activities  constitute  willful  trademark  infringement  and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the goodwill of Plaintiffs' Trademarks.

45.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

46.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 45.

47.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

48.     By using Plaintiffs' Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

49.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

50.     Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputations and the associated goodwill of Plaintiffs' respective brands.

**COUNT III**
**CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF PLAINTIFFS' TRADEMARKS**

51.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 50.

52.     Plaintiffs are the exclusive owners of their respective Plaintiffs' Trademarks.  The U.S. Registrations for Plaintiffs' Trademarks (Exhibits 1-2) are in full force and effect. Additionally, Plaintiffs' Trademarks are highly distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

53.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of Plaintiffs' Trademarks have acted with bad faith intent to profit from the unauthorized use of Plaintiffs' Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of Plaintiffs' Trademarks.

54.     Defendants have no intellectual property rights in or to Plaintiffs' Trademarks.

55.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

56.     Plaintiffs have no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating Plaintiffs' Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Plaintiffs.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq.*)**

57.     Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 56.

58.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiffs, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Plaintiffs' Products, representing that their products have Plaintiffs' approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

59.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

60.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs' to suffer damage to their reputations and associated goodwill.  Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs' Product or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' Product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill;

e. otherwise competing unfairly with Plaintiffs in any manner; and

f. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Plaintiffs' choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiffs, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc.,

Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiffs' selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Plaintiffs' selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiffs' Trademarks;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiffs' Trademarks; and

     c.  take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiffs be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiffs' Trademarks and $100,000 per domain name incorporating any of Plaintiffs' Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 14th day of June 2016.        Respectfully submitted,

                        /s/ Justin R. Gaudio
                        Kevin W. Guynn
                        Amy C. Ziegler
                        Justin R. Gaudio
                        Jessica L. Bloodgood
                        Greer, Burns & Crain, Ltd.
                        300 South Wacker Drive, Suite 2500
                        Chicago, Illinois 60606
                        312.360.0080
                        312.360.9315 (facsimile)
                        kguynn@gbc.law
                        aziegler@gbc.law
                        jgaudio@gbc.law
                        jbloodgood@gbc.law

                        *Counsel for Plaintiffs*
                        *Luxottica Group S.p.A and Oakley, Inc.*